## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER JENKINS, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  24-6731** |
| | : | |
| **WAL-MART ASSOCIATES, INC.,** | : | |
| **SAM'S EAST, INC.** | : | |

### MEMORANDUM

**MURPHY, J.**                                                                                              **May 1, 2026**

This is an employment discrimination case under the ADA and FMLA.  Christopher Jenkins worked at the Willow Grove Sam's Club for two and a half years.  Mr. Jenkins has sickle-cell anemia, and sometimes he has to miss work because of painful flare-ups.  A few weeks after a brief hospitalization, Sam's Club fired him.  Mr. Jenkins sued Sam's Club for disability discrimination, retaliation, failure to accommodate, and interference with his medical leave.  Mr. Jenkins says Sam's Club fired him because of his condition and his request for intermittent leave.  Sam's Club says it made efforts to accommodate Mr. Jenkins, but he violated the official attendance policy by failing to properly account for his absences.  Both sides now move for summary judgment — Sam's Club for judgment on all claims, and Mr. Jenkins for his interference claim.  The evidence on summary judgment is decidedly mixed, and a close examination reveals that a reasonable jury could see it either way.  Because there is a genuine dispute of material fact as to why Sam's Club fired Mr. Jenkins, we deny both parties' motions.

## I.     Factual Background[1]

In August 2021, Mr. Jenkins began working for Sam's Club[2] at its Willow Grove, PA location as a Tire and Battery Technician.  DI 27-3 ¶ 32.  During his new employee training, Mr. Jenkins saw Sam's Club's Attendance and Punctuality Policy (Attendance Policy).  DI 27-3 ¶ 37. In general, the Attendance Policy states that absences or late arrivals must be reported by calling a specific reporting line or filling out a form on the employee intranet.  DI 27-3 ¶ 11.  If these two options are unavailable, the Attendance Policy requires the employee to report his absence directly to a member of management.  DI 27-3 ¶ 12.  Finally, if the employee is physically unable to report the absence due to medical emergency, he may have another person report his absence or late arrival.  DI 27-3 ¶¶ 14, 15.  According to the Attendance Policy, "failure to provide this notification may result in disciplinary action, up to and including termination, even if the absence is authorized."  DI 27-3 ¶ 13.

For absences related to intermittent leave, the Attendance Policy more specifically requires the employee to report the absence to Sedgwick, Sam's Club's third-party-leave administrator, within two calendar days of the absence.  DI 27-3 ¶ 16.  If extenuating circumstances prevent an employee from reporting an absence timely, the Attendance Policy instructs them to contact Sedgwick to discuss.  DI 27-3 ¶ 18.  Failure to report the absence to

---

[1] We draw these facts from (1) Sam's Club's consolidated statement of material facts with plaintiff's response and defendants' reply (DI 27-3), (2) Mr. Jenkins's statement of material facts and defendants' response (DI 26-1), and (3) miscellaneous record items filed in the parties' Joint Appendix (DI 27-4, 27-5, 27-6, 27-7).  We adopt the sequential pagination supplied by the CM/ECF docketing system.

[2] Because Walmart's subsidiary, Sam's East, operates a chain of Walmart-owned warehouse clubs called Sam's Club, for clarity, we refer to the defendant as Sam's Club throughout this opinion.

2

Sedgwick timely will result in the intermittent leave time being denied, and the employee may receive points for the time missed.[3]  DI 27-3 ¶ 17.

Under the Attendance Policy, employees receive points as a form of demerits.  DI 27-3 ¶ 19.  An unauthorized absence results in one point.  DI 27-3 ¶ 25.  Authorized absences include approved intermittent leave and "any other absence protected by law."  DI 27-3 ¶ 20.  If an associate is absent from a scheduled shift and does not report the absence, and the absence is not authorized, the associate is deemed a "No Call/No Show," and will receive three points: two for the failure to report and one for the absence itself.  DI 27-3 ¶¶ 28, 29.  If an employee accumulates five or more points in a rolling six-month period, he will be subject to termination.  DI 27-3 ¶ 23.

Mr. Jenkins has sickle-cell anemia, a serious and chronic health condition; he was diagnosed with at birth.  DI 27-3 ¶ 38.  One effect of Mr. Jenkins's sickle cell anemia includes intermittent "flare-ups" of pain in his body that can result in hospitalization.  DI 27-3 ¶ 39.  Mr. Jenkins disclosed his sickle-cell anemia during his interview with Sam's Club in 2021 and stated that he may have to miss work due to flare-ups around two times per month.  DI 27-3 ¶ 40.

Between mid-September 2021 and mid-November 2022, Sam's Club excused multiple absences on Mr. Jenkins's attendance record as "Reasonable accommodation," "Auto-Authorized," "Prior approval from manager," or "Leave of absence – LOA – authorized."  DI

_____

[3] While an FMLA request is pending, Sam's Club managers are able to mark an absence as conditional.  DI 27-3 ¶ 19, Def.'s Reply.  When absences are under conditional status, they do not result in points and will be conditional until Sedgwick approves or denies the FMLA leave. DI 27-4 at 306, 27:1-9, 28:16-19.  Once Sedgwick has decided to approve or deny the leave, managers can go back into the system and identify whether the absence is authorized or unauthorized.  DI 27-4 at 306, 28:20-29:1.

27-3 ¶ 43.  In January 2023, Mr. Jenkins was approved for an intermittent leave of absence (ILOA) via Sedgwick to be effective from November 17, 2022, through November 6, 2023.  DI 27-3 ¶¶ 44-45.  Under this ILOA, Mr. Jenkins was approved for up to twelve absences per month, and an additional two absences every three months.  DI 27-3 ¶ 48.  The Sedgwick approval letter stated that "[a]ll absences must be reported to Sedgwick within 2 calendar days from the absence(s) missed. Absences reported after 2 calendar days may be denied."  DI 27-3 ¶ 49.  The letter also stated that "[y]ou must also report your absence using your normal call-in procedures for your facility/department. Failure to do so may result in accountability for that absence."  DI 27-3 ¶ 50.  Between mid-August and mid-October 2023, Mr. Jenkins received a total of fourteen points for No Call/No Show absences.  DI 27-3 ¶ 67.  Many of these points were due to untimely reporting to Sedgwick.  DI 27-3 ¶¶ 55-62.

On November 9, 2023, Mr. Jenkins received a letter from Sedgwick indicating that his ILOA ended on November 6, and that he should contact Sedgwick immediately if he needed to extend his intermittent leave.  DI 27-3 ¶¶ 68-69.  In the meantime, Mr. Jenkins accrued nine more points for No Call/No Show absences on November 15, 17, and 22.  DI 27-3 ¶ 76.  Mr. Jenkins did not apply for an extension of his intermittent leave until December 1.  DI 27-3 ¶ 72.

On November 28, 2023, Mr. Jenkins was hospitalized because of a sickle-cell crisis.  DI 26-1 ¶ 12.  He underwent several medical tests, was prescribed medication, and remained in the hospital until December 3, 2023.  DI 26-1 ¶¶ 14-15.  While he was hospitalized, Mr. Jenkins spoke to his supervisor, Tara Collins, about his hospitalization.  DI 26-1 ¶ 22.  Mr. Jenkins's mother also called Sam's Club to report his absence for him while he was hospitalized.  DI 27-3 ¶ 50, Pl.'s Resp., Def.'s Reply.  On December 1, Mr. Jenkins requested additional FMLA leave

through Sedgwick.  DI 27-3 ¶ 49,  Pl.'s Resp.

Once Mr. Jenkins filed for FMLA leave, Sedgwick notified him that he would need to submit medical documentation by December 21, 2023.  DI 27-4 at 253.  Sedgwick also immediately emailed Sam's Club about Mr. Jenkins's request and explained that a final decision would be issued within 20 days.  DI 27-4 at 265.  Mr. Jenkins submitted his medical certification to Sedgwick on December 21, 2023.  DI 27-4 at 255.  On December 22, 2023, Sedgwick approved Mr. Jenkins's request for an ILOA to be effective between November 28, 2023, and November 27, 2024.  DI 27-3 ¶ 94.  This ILOA would have approved Mr. Jenkins to be absent for up to two days per month for his condition, and an additional one hour every six months for treatment.  DI 27-3 ¶ 95.

The same day that Mr. Jenkins submitted his medical certification to Sedgwick, December 21, 2023, Sam's Club terminated him.  DI 27-3 ¶¶ 110-111.  At the time of his termination, Mr. Jenkins had more than five points on his attendance record.  DI 27-3 ¶ 112.  Mr. Jenkins received a total of fourteen occurrence points for failing to timely report his absences to Sedgwick, and for No Call/No Shows, during August, September, and October of 2023.  DI 27-3 ¶ 99.  Mr. Jenkins also received a total of twenty-seven occurrence points for No Call/No Shows after his intermittent leave ended in November of 2023.  DI 27-3 ¶ 98.  After his hospital discharge, Mr. Jenkins received a total of eighteen occurrence points for No Call/No Shows on December 6, 7, 8, 10, 12, and 20.  DI 27-3 ¶ 93.

In December 2024, Mr. Jenkins filed suit, alleging various claims under the Americans

with Disabilities Act (ADA), the Pennsylvania Human Relations Act (PHRA),[4] and the Family Medical Leave Act (FMLA).  DI 1 ¶ 1.  Mr. Jenkins's claims are: (1) ADA disability discrimination; (2) ADA retaliation; (3) ADA failure to accommodate; (4) FMLA retaliation; and (5) FMLA interference.[5]  DI 1 ¶¶ 45-64.  Following discovery, Mr. Jenkins moves for partial summary judgment on his FMLA interference claim.  DI 26.  Sam's Club moves for summary judgment on all claims.  DI 27-1.

## II.    Standard of Review

The Federal Rules of Civil Procedure require summary judgment movants to "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A material fact is one "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022) ("[F]or a factual dispute to be material, its resolution must have the potential to affect the outcome of the suit.").  And a "genuine dispute" over a material fact means "the evidence is such that a reasonable jury could return a verdict for" the party not moving for summary judgment.  *Anderson*, 477 U.S. at 248.  This evidence can be "direct or circumstantial" and "must amount to more than a scintilla,

---

[4] Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts." *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).  Thus, to the extent that a plaintiff's claims under the ADA are coextensive with the PHRA, we need not conduct a separate analysis for each of them.  *Id.*; *see also Fasold v. Just.*, 409 F.3d 178, 184 n.8 (3d Cir. 2005) ("[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.") (citation modified).  Here, Mr. Jenkins's claims appear coextensive, and so our analysis under the PHRA is the same as for his federal claims.

[5] Mr. Jenkins also brought ADA and PHRA hostile work environment claims but later withdrew them.  DI 28 at 22 n.5.

but may amount to less (in the evaluation of the court) than a preponderance." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).  In deciding whether a genuine dispute of material fact exists, we must view "the evidence in the light most favorable to the nonmovant." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010).  Moreover, because employment discrimination cases center around the question of why an employer took an adverse action against a plaintiff, which is "clearly a factual question," summary judgment is rarely appropriate in this type of case. *Marzano v. Comput. Sci. Corp.*, 91 F.3d 497, 509-10 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts Inc.*, 814 F.2d 893, 899 (3d Cir. 1987)).

### III.    Analysis

#### a.    ADA Disability Discrimination: A jury will decide whether Sam's Club discriminated against Mr. Jenkins because of his sickle cell anemia.

Courts analyze disability discrimination claims under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Gardner v. Ulta Salon Cosms. & Fragrance Inc.*, No. 22-2785, 2024 WL 1110384, at *1 (3d Cir. Mar. 14, 2024) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667-68 (3d Cir. 1999)).  Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination.  *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (citation omitted).  If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination.  *Id.*

To establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate that (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to

perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). For the purposes of this motion only, Sam's Club does not contest the issue of whether Mr. Jenkins satisfies the first or second prongs of the claim, so we focus only on the third prong. DI 27-1 at 9 n.3.

The evidentiary burden at the *prima facie* stage is "rather modest: it is to demonstrate to the court that . . . discrimination *could* be a reason for the employer's action." *Marzano*, 91 F.3d at 508 (emphasis in original). Mr. Jenkins has met that burden here. Significantly, the evidence allows for the conclusion that, when making its termination decision, Sam's Club held against Mr. Jenkins absences that could have been excused as a reasonable accommodation under the ADA (November 29 and December 1, 2023). DI 27-4 at 109; DI 27-4 at 122. Moreover, Sam's Club failed to determine whether Mr. Jenkins could have these absences excused before firing him — or, at the very least, determine whether it could mark them as conditional absences until the FMLA request was approved or denied. A jury could also conclude that Sam's Club treated similarly situated non-disabled employees more favorably by issuing them official written warnings, accompanied by meetings to discuss the written warnings, before they were terminated. *See, e.g.,* DI 27-4 at 138-139, 25:2-27:25; DI 28 at 20-21. On that record, discrimination could have been a reason for Sam's Club's action. *Marzano*, 91 F.3d at 508.

In response, Sam's Club advances a legitimate, non-discriminatory reason for terminating Mr. Jenkins: he had too many points, in violation of the Attendance Policy. The written policy states that if an employee accumulates five or more points in a rolling six-month period, he can

8

be terminated.  It is undisputed that when Mr. Jenkins was terminated, he had more than five points on his attendance record.  DI 27-3 ¶ 112.  Failure to comply with company policies and procedures can be a legitimate, non-discriminatory reason.  *Campo v. Mid-Atl. Packaging Specialties, LLC*, 564 F. Supp. 3d 362, 385-86 (E.D. Pa. 2021).

Now the burden shifts back to Mr. Jenkins to show that Sam's Club's reason for firing him is mere pretext.  A plaintiff may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly (e.g., by painting them as weak, implausible, contradictory, or incoherent), or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action (e.g., by showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of her protected class or other protected categories of persons).  *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994) (emphasis in original).  Also, the timing of an employee's dismissal may raise an inference that an employer's purported reasons for terminating him were pretextual.  *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 639 (3d Cir. 1993).

The record allows Mr. Jenkins to both directly discredit the proffered reason and provide circumstantial evidence that discrimination was more likely than not a motivating cause of the termination.  First, as explained above, when asked to list the reasons why Mr. Jenkins was terminated, Sam's Club pointed to Mr. Jenkins's Attendance Record, which lists points assessed to him for absences on November 28 and December 1, 2023, when Mr. Jenkins was in the

hospital for his sickle cell anemia.  As for circumstantial evidence, Mr. Jenkins adduced evidence of timing, inconsistent explanations, and similarly situated persons treated more favorably.

*Timing.*  Where the temporal proximity is not "unusually suggestive," we ask whether "the proffered evidence, looked at as a whole, may suffice to raise the inference" of discrimination.  *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).  Where the temporal proximity between the protected activity and the adverse action is "unusually suggestive," it is sufficient standing alone to create an inference of causality and defeat summary judgment.  *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

Mr. Jenkins focuses on the 20 days between when he requested additional FMLA leave and when he was terminated as a way to suggest pretext.  DI 28 at 16.  When viewing temporal proximity with the other evidence in this record, 20 days may be enough to establish pretext.  *See Farrell*, 206 F.3d at 280 (agreeing with the district court that timing plus other evidence may be an appropriate test where temporal proximity is not so close to be "unduly suggestive," and that three to four weeks could support an inference of causation).  Moreover, regardless of whether 20 days is enough to support a conclusion of pretext, Mr. Jenkins's medical documentation for his FMLA request was due on December 21, 2023, and Sam's Club terminated him *on the same day.*  This was also *one day* before Mr. Jenkins's FMLA request was approved by Sedgwick.  A jury could fairly view this as "unusually suggestive" temporal proximity.  *See Kern v. DAS Cos. Inc.*, No. 24-2420, 2025 WL 2170324, at *9 n.4 (3d Cir. July 31, 2025) ("Unusually suggestive timing has generally been understood to mean no more than a handful of days") (citation

10

modified); *see also Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two days is unusually suggestive).

**Inconsistent explanations.**  In an interrogatory asking Sam's Club to identify each reason why Mr. Jenkins was terminated, Sam's Club responded and pointed to Mr. Jenkins's Attendance Record, "which identifies the dates and events for which [Mr. Jenkins] received attendance occurrence points, *leading to [Mr. Jenkins'] separation of employment*."  DI 27-4 at 109 (emphasis added).  This statement, understood most favorably to Mr. Jenkins, suggests that all the dates on Mr. Jenkins's Attendance Record were important in leading to his termination. Later, during depositions, Christopher Rodgers, Mr. Jenkins's supervisor, stated that Sam's Club had already had plans to terminate him before he was even hospitalized.  DI 27-4 at 190, 79:1-19.  A jury would be free to resolve these inconsistencies as it sees fit.

**Similarly situated/comparator evidence.**  The Third Circuit has stated that "similarly situated does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects . . . [this] often includes a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  *Opsatnik v. Norfolk S. Corp.*, 335 Fed. App'x 220, 222-23 (3d Cir. 2009) (citation modified).  Here, Mr. Jenkins has provided comparative evidence that we find sufficient to warrant denial of summary judgment.

Mr. Jenkins identifies two other employees, Brandon Gross and Caiyan Mace, who worked as tire and battery technicians at the Willow Grove location and who were supervised by Tara Collins, just like Mr. Jenkins.  DI 28 at 20.  Both Mr. Gross and Mr. Mace also had

11

attendance issues, but they both received verbal and written discipline for their attendance prior to being terminated.  DI 28 at 20.  In contrast, Mr. Jenkins was not given official written discipline — only one of his supervisors, Joshua Knight-Fochs, spoke with Mr. Jenkins about his attendance on July 20.  DI 27-5 at 62.  And unlike Mr. Jenkins, these other two employees did not disclose any medical conditions, did not request any accommodations, and did not request FMLA leave.  DI 28 at 20.  The comparators here dealt with the same supervisor, were subject to the same standards because they were all tire and battery technicians at the same Sam's Club location, and all engaged in similar conduct of violating the Attendance Policy.  A reasonable jury could find these comparators similarly situated, and Mr. Jenkins has provided sufficient evidence that the comparators not of his protected class were treated more favorably.

For some or a combination of these reasons, we conclude that a reasonable jury could conclude that Mr. Jenkins has established pretext.  Thus, Sam's Club's motion for summary judgment on the disability discrimination claim is denied.

### b.   ADA and FMLA Retaliation: A jury will decide whether Sam's Club retaliated against Mr. Jenkins for exercising his ADA and/or FMLA rights.

The *McDonnell Douglas* burden shifting framework also assists with retaliation claims under the ADA and FMLA.[6]  *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022).  The elements of a claim for retaliation under the ADA, PHRA, and FMLA are "essentially the same," so we address them together.  *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 422 (E.D. Pa. 2022).

---

[6] Mr. Jenkins also argues that he can establish his FMLA retaliation claims under the mixed-motive framework established in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  *See* DI 28 at 10-12.  Because the defendant moves for summary judgment entirely under *McDonnell Douglas*, we will proceed exclusively under this framework for purposes of evaluating this motion.

To state a *prima facie* case of retaliation, a plaintiff must show that (1) he engaged in a protected activity (such as requesting a reasonable accommodation under the ADA or taking FMLA-qualifying leave); (2) he suffered an adverse employment decision; and (3) there was a causal connection between the protected activity and the adverse employment decision. *Garcia*, 592 F. Supp. 3d at 422; *see Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004) (stating elements of an FMLA retaliation claim; *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (stating elements of an ADA retaliation claim). Like with its disability discrimination argument, Sam's Club contests only the third prong for both the ADA and FMLA retaliation claims. DI 27-1 at 19, 28.

As explained above in our disability discrimination analysis, the *prima facie* case under *McDonnell Douglas* does not carry an onerous burden. Moreover, the framework for evaluating causality under a retaliation claim is largely the same as when evaluating a disability discrimination claim. "We consider a broad array of evidence in determining whether a sufficient causal link exists to survive a motion for summary judgment." *LeBoon*, 503 F.3d at 232 (citation modified). Where the temporal proximity between the protected activity and the adverse action is "unusually suggestive," it is sufficient *standing alone* to create an inference of causality and defeat summary judgment. *Id.* (citing *Clark Cnty. Sch. Dist.*, 532 U.S. at 273-74) (emphasis added). Sam's Club argues that Mr. Jenkins cannot show that there is a causal connection between any protected activity and his separation of employment. DI 27-1 at 19, 28. We disagree. Given the modest burden on Mr. Jenkins, a reasonable jury could find that Mr. Jenkins's termination gives rise to an inference of ADA or FMLA retaliation. Mr. Jenkins's protected activity here was, under both the ADA and FMLA, requesting intermittent leave on

13

December 1 while he was in the hospital.  On December 21, Sam's Club terminated Mr. Jenkins purportedly for points accrued in violation of the Attendance Policy.  This was three weeks after his request, but it was also the same day that his medical certification for the request was due, and the day before Sedgwick approved his request.  For reasons similar to those we explained above, a reasonable jury could infer causation.  For example, based on Sam's Club's interrogatory response and Mr. Jenkins Attendance Record, a reasonable jury could conclude that Sam's Club considered absences that could have been excused as a reasonable accommodation under the ADA or have been FMLA-qualifying when it fired him.  This is direct evidence of causation.  Moreover, the temporal proximity here of one day between Mr. Jenkins's protected activity and the adverse action is "unusually suggestive" and is sufficient standing alone.

Again, Sam's Club states that its legitimate, non-discriminatory reason for terminating Mr. Jenkins was because he had too many points in violation of the Attendance Policy.  Mr. Jenkins, however, has provided enough evidence to survive summary judgment.  A reasonable jury could conclude that Sam's Club's reason is pretextual.  For pretext, the plaintiff can point to "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus."[7]  *LeBoon*, 503 F.3d at 232-33.  The reasons are largely the same as we explained for Mr. Jenkins's disability discrimination claim.  Mr. Jenkins can both directly discredit the proffered reason and offer circumstantial evidence.  Mr. Jenkins identified

---

[7] While the Third Circuit discussed this rule in the context of the plaintiff establishing a *prima facie* case, later in that opinion, the court mentioned that "evidence supporting the prima facie case is often helpful at the pretext stage and nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other." *LeBoon*, 503 F.3d at 234 n.10 (citing *Farrell*, 206 F.3d at 286).

inconsistencies in Sam's Club's reasons for terminating him, as well as evidence of similarly situated employees being treated more favorably. A reasonable jury could adopt Mr. Jenkins's view of the evidence and conclude that Sam's Club retaliated against Mr. Jenkins for requesting leave. Thus, Sam's Club's motion is denied in this respect.

### c. ADA Failure to Accommodate: A jury will determine whether Sam's Club failed to accommodate Mr. Jenkins's disability.

A plaintiff bringing an ADA failure-to-accommodate claim must establish: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017). Sam's Club argues that it did not fail to accommodate Mr. Jenkins and indeed went far beyond making a "good faith effort to assist," because Sam's Club excused over sixty absences in the first two years of Mr. Jenkins's employment and approved him for a "generous leave of absence" between November 17, 2022, and November 6, 2023. DI 27-1 at 16. Mr. Jenkins responds by arguing that after he requested medical leave (*i.e.*, his request for an accommodation), Sam's Club did not make a good faith effort in assisting him in determining whether his hospital absences could be excused as a reasonable accommodation, and Mr. Jenkins could have been reasonably accommodated but for Sam's Club's lack of good faith. DI 28 at 31-32. We think Mr. Jenkins did request an accommodation and that a reasonable jury could conclude that Sam's Club did not make a good faith effort to assist.

Starting with requesting a reasonable accommodation, the law is clear that a request for FMLA leave alone may constitute a request for an accommodation. *See Capps*, 847 F.3d at 156-57 ("We recognize that a request for FMLA leave may qualify, under certain circumstances, as a

15

request for a reasonable accommodation under the ADA, *see* 29 C.F.R. § 825.702(c)(2), and to the extent that the District Court held otherwise, that was error."). Here, Sam's Club did not approve Mr. Jenkins's requested FMLA leave until *after* it terminated him, and Mr. Jenkins could not take the requested leave because he had already been fired. It is undisputed that Mr. Jenkins filed a leave of absence request on December 1, 2023. DI 27-3 ¶ 77. Thus, under *Capps*, Mr. Jenkins requested an accommodation.

The third element requires the plaintiff to establish that the employer did not make a good faith effort to assist the employee. *Capps*, 847 F.3d at 157. Examples of failing to act in good faith include "failure by one of the parties to help the other party determine what specific accommodations are necessary, obstructing or delaying the interactive process, and failing to communicate, by way of initiation or response." *Wilson v. Mt. Airy #1, LLC*, No. 3:15cv249, 2015 WL 8331869, at *5 (M.D. Pa. Dec. 9, 2015) (citation modified).

Viewing the evidence in the light most favorable to Mr. Jenkins, a reasonable jury could conclude that Sam's Club did not make a good faith effort to assist him in seeking an accommodation. Mr. Jenkins has established that he filed for FMLA leave on December 1, 2023 (DI 27-4 at 253) and called his supervisor Tara Collins to let her know that he was in the hospital for his sickle-cell anemia (DI 27-4 at 148, 64:18-65:7). Sam's Club received notification of Mr. Jenkins's request on December 1. DI 27-4 at 265. After Mr. Jenkins filed his FMLA leave request, the next step was to submit his medical documentation by December 21, which he did. DI 27-4 at 255.

When Mr. Rodgers met with Mr. Jenkins on December 21, he asked Mr. Jenkins if he had any documentation that he could provide to Sedgwick for why he had been calling out on those

days, and Mr. Jenkins had none with him.  DI 27-4 at 193, 92:14-18.  Mr. Rodgers also stated in his deposition statement that if Mr. Jenkins did have documents, that would have changed his mind about terminating him.  DI 27-4 at 193, 92:19-25.  A reasonable jury would not have to view this as a good faith effort.  The jury could find that Mr. Jenkins did have that documentation (because he submitted the required medical certification to Sedgwick), and could question why Sam's Club did not reach out to Sedgwick for Mr. Jenkins's documentation (since Sedgwick handles these matters for Sam's Club).  As evidence of its good faith, Sam's Club also points to the fact that it went back and manually excused Mr. Jenkins's absences between September 2021 and November 2022.  DI 27-1 at 16; DI 27-3 ¶ 43.  But again, a reasonable juror could fairly question why Sam's Club did not consider that approach again for Mr. Jenkins before terminating him in December 2023.  A reasonable jury is free to view these facts as consistent with Mr. Jenkins's position.

> **d.  FMLA Interference: A jury will decide whether Sam's Club interfered with Mr. Jenkins's FMLA rights.**

To establish a claim of FMLA interference, the plaintiff must show: (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he was entitled under the FMLA.  *Ross*, 755 F.3d at 191-92 (citations omitted).

As a premise of its motion, Sam's Club does not dispute that Mr. Jenkins has satisfied the first three elements of the interference claim.  And in both cross-motions for summary judgment on this issue, the parties argue that there is no genuine dispute of material fact as to the last two elements.  But there is.  Starting with Mr. Jenkins, he argues that he satisfied the last two prongs

as a matter of law because: (1) he gave notice of his need to take FMLA leave when he contacted his manager and Sedgwick about his hospitalization (DI 26 at 15, 18) and (2) he was denied benefits for which he was lawfully entitled when Sam's Club assessed points against him for his November 29, 2023 and December 1, 2023 absences and relied on those points in deciding to terminate him (DI 26 at 19, 21).  In contrast, Sam's Club argues that it is entitled to summary judgment on this issue because (1) Mr. Jenkins's repeated failure to adhere to Sam's Club's Attendance Policy cannot constitute proper notice to his employer of his intention to take FMLA leave, and (2) Sam's Club terminated Mr. Jenkins for reasons unrelated to his intention to exercise his FMLA rights, so Mr. Jenkins cannot prove that he was denied any FMLA benefits. DI 27-1 at 24-26.  Assuming without deciding that Mr. Jenkins did properly give notice of his need to take FMLA leave, there remains a genuine dispute of material fact as to whether Mr. Jenkins was denied any FMLA benefits.

FMLA regulations bar employers from considering an employee's FMLA leave as a negative factor in employment actions such as disciplinary actions, as well as from counting FMLA leave under no fault attendance policies.  29 C.F.R. § 825.220(c); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012).  Thus, assessing points or firing an employee for FMLA-qualifying absences could constitute FMLA interference.  *See Modaffare v. Owens Brockway Glass Container, Inc.*, 643 F. Supp. 2d 697, 703 (E.D. Pa. 2009) ("Because it is a violation to consider absenteeism due to an FMLA leave in a decision to terminate an employee, this is another conceivable example of Defendant denying Plaintiff benefits to which he was entitled under the FMLA.").  The FMLA, however, does not provide employees with a right against termination for a reason other than interference with their FMLA rights.  *Sarnowski*

18

*v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007) (citations omitted).  A plaintiff "will not prevail on [an] interference claim if [the defendant] can establish that it terminated [the plaintiff] for a reason unrelated to his intention to exercise his rights under the FMLA." *Id.*

The heart of the parties' disagreement here is whether Sam's Club terminated Mr. Jenkins because of his FMLA-qualifying absences while he was in the hospital.  On the one hand, interrogatory and documentary evidence suggest that Sam's Club did take Mr. Jenkins's FMLA-qualifying absences into account when it terminated him.  When asked to list each reason why Mr. Jenkins was terminated, Sam's Club pointed to Mr. Jenkins's Attendance Record, which identifies the dates for which Mr. Jenkins received points that ultimately led to his termination.  DI 27-4 at 109.  Critically, the Attendance Record that Sam's Club refers to includes points assessed to Mr. Jenkins for absences on November 28, 2023 and December 1, 2023, which was when Mr. Jenkins was in the hospital.  DI 27-4 at 122.

On the other hand, deposition testimony and Mr. Jenkins's overall attendance record suggest that it is entirely possible that Mr. Jenkins was terminated because of his failure to follow the Attendance Policy procedures.  Mr. Rodgers, Mr. Jenkins's supervisor, stated in his deposition that Mr. Jenkins was terminated not for his hospital stay, but rather because Mr. Jenkins did not properly notify Sedgwick of his absences so that they could be approved.  DI 27-4 at 189, 77:21-25; DI 27-4 at 190, 80:18-81:7.  A jury could consider Mr. Jenkins's Attendance Record, related testimony, and the other record evidence and come to two very different, but both reasonable conclusions.  A jury may see the November 28, 2023 and December 1, 2023 absences included in Mr. Jenkins's Attendance Record and conclude that Sam's Club, when it fired Mr. Jenkins for his attendance, unfairly took into account his FMLA-qualifying absences.

19

Or a jury may see the many other absences listed throughout Mr. Jenkins's Attendance Record — particularly the ones after he was discharged from the hospital — and conclude that Sam's Club was justified in firing Mr. Jenkins for being over the 5-point limit.  Because of this, summary judgment on the FMLA interference claim is improper.

## IV.  Conclusion

For the reasons discussed above, we deny Sam's Club's motion for summary judgment in its entirety.  We also deny Mr. Jenkins's motion for summary judgment on his FMLA interference claim.  All of Mr. Jenkins's claims proceed to trial.